## LOUIS PIZITZ DRY GOODS CO., Inc. v. DEAL et al.

### Civ. No. 6748.

United States District Court, N. D. Alabama, S. D.

May 7, 1953.

William S. Pritchard and Winston B. McCall, Birmingham, Ala., for plaintiff.

John D. Hill, U. S. Atty., W. R. Bradford and George Huddleston, Jr., Asst. U. S. Attys., Birmingham, Ala., and Homer R. Miller, Sp. Asst. to the Atty. Gen., for defendant.

LYNNE, District Judge.

There being no genuine issue as to any material fact, this case was submitted on motions for summary judgment by both plaintiff and defendant. This is an action to recover income and excess profit taxes for the six fiscal years ending January 31, 1942, through January 31, 1947, in the respective amounts of $1,573.63, $27,451.06, $36,135.72, $18,264.21, $38,460.69, and $250.18, with interest as provided by law.

Plaintiff, an Alabama corporation, operated a large mercantile department store in Birmingham, Alabama, used the accrual basis of accounting and kept its inventory records according to authorized retail inventory procedure.[1] Its income tax return for the fiscal year ending January 31, 1942, was timely filed and included therewith a statement of election to use the elective method of computing inventories as provided by Section 22(d) (1) (B),[2] filing the

---

3. Par. 7, Agreed Statement of Facts, and affidavit of L. B. Stevens dated March 23, 1953.

1. Sec. 22(c), 26 U.S.C.A. § 22(c), and Sec. 29.22(c) (8) of Regulation 103 and Sec. 29.22(c) (8) of Regulation 111.

2. Sec. 22(d) (1) (B), Internal Revenue Code:

"(d) (1) [as amended by Section 219 (a), Revenue Act of 1939, c. 247, 53 Stat. 862] A taxpayer may use the following method (whether or not such method has been prescribed under sub-

1942 and subsequent returns involved herein under the "last in, first out" or "Lifo" method. With Form 970 filed under the provisions of Section 22(d) (1) plaintiff included the following statement:

"The taxpayer hereby agrees to such adjustments incident to the change to the elective method, or to the use of such method, or to any later change from such method, in the inventories of prior taxable years or otherwise, as the Commissioner of Internal Revenue upon the examination of the taxpayer's returns for the years involved may deem necessary in order that the true income of the taxpayer may be clearly reflected. * * *

"The taxpayer has applied the retail inventory method, adjusted to the last-in, first-out basis by using indices of price changes, developed for the individual departments, based upon the company's own experience in determination of cost."

In January of 1946, the Commissioner determined that the use by the plaintiff of "Lifo" did not clearly reflect income and proposed a deficiency against the plaintiff for each year involved. Plaintiff protested and as a result of field conference was permitted to use "Lifo."

On March 9, 1948, the Commissioner authorized retail merchants who had filed returns using unauthorized indices with the elective method to file amended returns using acceptable indices for years which were still open.[3]

On September 18, 1948, plaintiff filed amended returns using correct indices. With these returns plaintiff filed, for the first time, an election invoking for each year involved herein the involuntary liquidation and replacement provisions of Section 22(d) (6).[4] The Commissioner accepted the recomputed tax using correct indices but denied plaintiff the benefits of Section 22(d) (6) for which plaintiff claimed refunds on September 21, 1948, the same being disallowed April 6, 1950. This denial to plaintiff of the benefit of Section 22(d) (6) was on the ground that the election was not timely made. The only question to be decided here is whether or not plaintiff is entitled to the benefits of Section 22(d) (6) when the election was made

section (c), in inventorying goods specified in the application required under paragraph (2): * * *
"(B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; * * *."

3. Memo 6244, 1948-1-12770, 1 Cum.Bull. 21. "Retailers who have filed, on the basis of the elective method, returns for past years which are still open, and who used indices that are not acceptable to the Commissioner, may file amended returns employing acceptable indices."

4. Sec. 22(d) (6), Internal Revenue Code: "(6) [as added by Section 119, Revenue Act of 1942, c. 619, 56 Stat. 798, amended by the Act of September 5, 1950, c. 851, 64 Stat. 593, and Act of January 11, 1951, c. 1227, 64 Stat. 1244] Involuntary Liquidation and Replacement of Inventory.

"(A) Adjustment of net income and resulting tax.—Years beginning prior to January 1, 1948. If, for any taxable year beginning after December 31, 1940, and prior to January 1, 1948, the closing inventory of a taxpayer inventorying goods under the method provided in this subsection reflects a decrease from the opening inventory of such goods for such year; and if the taxpayer elects, at such time and in such manner and subject to such regulations as the Commissioner with the approval of the Secretary may prescribe, to have the provisions of this paragraph apply, and if it [is] established to the satisfaction of the Commissioner, in accordance with such regulations, that such decrease is attributable to the involuntary liquidation of such inventory as defined in subparagraph (B), and if the closing inventory of a subsequent taxable year, ending prior to January 1, 1953, reflects a replacement, in whole or in part, of the goods so previously liquidated, the net income of the taxpayer otherwise determined for the year of such involuntary liquidation shall be adjusted as follows: * * *."

after the time had expired, as governed by Section 29.22(d) (7).[5]

The undisputed facts are that the election was made September 18, 1948, to apply to the tax years ending January 31, 1942, through January 31, 1947. The election was not made within six months after the time of filing the income tax return for any of the years involved. Nevertheless, plaintiff contends that it is entitled to the benefits of Section 22(d) (6).

Plaintiff's primary contention is that the amended returns were timely filed because filed at the first opportunity after the recognition by the Hutzler case [6] and subsequent related regulations [7] that "Lifo" could be used by a retail store. Plaintiff in effect says that at the time of filing the return for the fiscal year ending January 31, 1942, it was unable to make a mature decision because of the confusion and uncertainty of the law pertaining to the use of "Lifo" by retail merchants. At this time plaintiff elected to use "Lifo" under 22(d) (1) (B) and could have, but did not, further elect to use involuntary liquidation provisions of Section 22(d) (6). Plaintiff in fact anticipated the result in the Hutzler case, decided five years later, by its return for the year ending January 31, 1942. The wisdom of the course then taken is not obscured by the fact that plaintiff, proceeding with caution in an area of confusion, did not then make the election for which it now contends. Plaintiff resolved the confusion and made an election to use "Lifo" and thus availed itself of the alleged change in law complained of. This case is not governed by cases where there were radical changes in law of which the

5. "Sec. 29.22(d)–7 [as amended by T.D. 5841, approved May 22, 1951, 1951–1 Cum.Bull. 11]. Involuntary Liquidation and Replacement.—If prevailing war conditions beyond the control of the taxpayer should render it impossible during the period of the war for a taxpayer using the elective inventory method to have on hand at the close of the taxable year a stock of merchandise in kind and description like that included in the opening inventory for the year, or in a quantity equal to that of the opening inventory, the resulting inventory decrease for the year will be regarded, at the election of the taxpayer, as reflecting an involuntary liquidation subject to replacement. If the taxpayer notifies the Commissioner at any time not later than six months after the time of filing his income tax return for the year of the liquidation that he intends to effect a replacement of the liquidated stock, in whole or in part, and that he desires to have applied in his case the involuntary liquidation and replacement provisions of section 22(d) (6), and if he establishes to the satisfaction of the Commissioner the involuntary character of the liquidation to which his stock has been subjected, effect shall be given, when replacement has been made, to an adjustment of net income for the year of liquidation to the extent of the difference between the replacement costs incurred and the original inventory cost of the base stock inventory liquidated. * * * "If the taxpayer would have the involuntary liquidation and replacement provisions applicable with respect to any inventory decreases suffered during war years, he must so elect not later than six months after the time of filing his income tax return for the year reflecting the decrease."

6. Hutzler Bros. Co. v. Commissioner, 1947, 8 T.C. 14.

7. Memo 6244, Note 3, supra; Treas.Reg. 103, 111 Sec. 29.22(d) (1) as amended by T.D. 5605, March 4, 1948—"If a taxpayer using the retail method of pricing inventories, authorized by section 29.22 (c)–8, elects to use in connection therewith the elective inventory method authorized by section 22(d) of the Code, the apparent cost of the goods on hand at the end of the year, determined pursuant to section 29.22(c) (8), shall be adjusted to the extent of price changes therein taking place subsequent to the close of the preceding taxable year. The amount of any apparent inventory increase or decrease to be eliminated in this adjustment shall be determined by reference to acceptable price indices established to the satisfaction of the Commissioner. Price indices prepared by the United States Bureau of Labor Statistics which are applicable to the goods in question will be considered acceptable to the Commissioner. Price indices which are based upon inadequate records, or which are not subject to complete and detailed audit within the Bureau, will not be approved."

petitioner had scant notice[8] or by the cases where there was a material change of fact.[9]

Plaintiff further contends that the amendment for the purpose of authorizing a change in indices under Section 22(d) (1) (B) should also recognize retroactively an election to use Section 22(d) (6). This permissive amendment by its own terms was for the limited purpose of changing indices under a prior election timely made. It cannot be construed to permit a new and different election after the time for making the election has expired.

Plaintiff further relies upon the proposition that the Commissioner can provide relief in any case which appears to involve hardship, but petitioner has never presented a claim to the Commissioner setting forth the facts upon which a finding of hardship could be sustained.

It is accordingly held that the election to use Section 22(d) (6) was not timely made and plaintiff is not entitled to its benefits.

Defendants' motion for summary judgment is sustained.

---

8. Morrow, Becker & Ewing v. Commissioner, 5 Cir., 1932, 57 F.2d 1.

9. Meyer's Estate v. Commissioner, 5 Cir., 1953, 200 F.2d 592.